**Signed and Filed: December 26, 2017**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Bankruptcy Case No. 13-30340-DM |
| GABRIEL TECHNOLOGIES CORPORATION, a Delaware Corporation, and TRACE TECHNOLOGIES LLC, a Nevada Limited Liability company, | Chapter 7 |
| Administratively Consolidated Debtors. | |
| QUALCOMM INCORPORATED, a Delaware Corporation, | Adversary Proceeding No. 17-03057 |
| Plaintiff, | |
| v. | |
| NORTH WATER INTELLECTUAL PROPERTY FUND L.P. 3A, a limited partnership organized and existing under Delaware, et al., | |
| Defendants. | |

**MEMORANDUM DECISION ON MOTION TO DISMISS**

I. INTRODUCTION

On December 4, 2017, the court issued its memorandum decision granting partial summary judgment ("PSJ") in favor of plaintiff, Qualcomm.[1]  On September 29, 2017, North Water moved to dismiss the Complaint (the "Motion") (Dkt. No. 6). Qualcomm opposed the

_____
[1] The same definitions in that memorandum decision or in the Complaint are used here.

Motion.

For the reasons stated below, the court will grant the Motion in part with leave to amend, grant it in part without leave to amend, deny it in part as moot, deny it in part and take no action as to the sixteenth claim.

II.  DISCUSSION

1.  **Preliminary matters.**

As confirmed at oral argument on the Motion, the seventh and eighth claims are the only claims by which Qualcomm seeks affirmative recovery.  The thirteen remaining claims (not including the sixteenth) are actually objections to claims (proper under Rule 3007(b)), with the legal theories advanced in each set forth defensively.  Given that posture of this adversary proceeding, there are problems.  The court requires that any amended complaint identify accurately the claimant by name and clarify what claim number to which the objection is directed.

To be specific, there are four different entities defined as North Water, yet the Complaint only alleges that one of them, GBC Holdco ("GBC"), has filed a claim as assignee of North Water Intellectual Property Fund, L.P. 3A (Complaint, ¶¶5 & 83).  There are six parties named as the Alleged Secured Purchasers, the Manning Group plus Walker (Complaint, ¶ 12) yet only Manning and Moore are alleged to have filed claims (Complaint, ¶¶ 8 & 9).  No Subordinated Interestholder has filed a claim according to the Complaint.  An amended complaint should not name any party other than GBC, Manning and Moore in any objection to claim that is asserted defensively unless other claimants and their claim number are identified specifically.  Parties who have not filed claims

-2-

should not be named even by group definition in specific claims for relief unless they actually are claimants or parties against whom Qualcomm seeks affirmative relief.[2]

2. **The PSJ.**

As the PSJ determined that North Water and other defendants who were properly served, such as The Manning Group, had no lien on the Settlement Proceeds, portions of the second, third and fourth claims have been resolved, justifying denial of the Motion as moot as to those parties. More specifically, the second and third claims seek to avoid as fraudulent under section 548 and 544 the transfer of a lien on the Settlement Proceeds. There was no transfer so there is no lien to avoid. Those same claims for relief seek to avoid obligations fraudulently incurred. They are dealt with, *supra*. The fourth claim seeks to preserve the fraudulent transfer so for the same reason the Motion is moot. The fourth claim also seeks to recover and preserve any avoided obligation. Because section 550 and 551 say nothing about preserving avoided obligations, no claim for that relief exists as a matter of law. The Motion is granted without leave to amend the fourth claim as to that portion of the claim as well.

The tenth claim pertains to the non-assignability of the legal malpractice and related claims. That claim is now moot as well so the Motion is denied as moot.

The fourteenth claim seeks avoidance of liens. That too has been rendered moot, meaning the Motion must be denied.

---

[2] It was, of course, proper to name individuals whose claims of lien or status as secured creditors was originally challenged and whose alleged secured status has been dealt with by the PSJ. The court still awaits the requested order granting the motion that resulted in the PSJ.

-3-

The fifteenth claim asserts the ineffectiveness of any liens under section 552. That too has been rendered moot, meaning the Motion must be denied.

3. **Claims for relief not impacted by the PSJ.**

The twelfth claim relies on section 502(b)(4) with a strained construction of that section that would treat North Water's claim (assigned to GBC) as a claim by an insider or an attorney for services rendered. Whether North Water is an insider is a fact-specific question; it certainly is not an attorney. But in either case that fact that money advanced by it to the Debtors, who in turn may have paid some of the advances to their attorneys, simply does not fit the purpose or the letter of the statute. The Motion will be granted as to the twelfth claim without leave to amend.

The thirteenth claim simply seeks setoff of any obligations to North Water with any obligations owed by North Water. That claim is more in the nature of an affirmative defense so the Motion is denied as to it.

4. **Statute of Limitations**.

As a statute of limitations does not prevent the defensive use of a claim (*El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.), 217 F.3d 1161 (9th Cir. 2000)),* the claims other than the seventh and eighth are not vulnerable to a statute of limitations defense and the court will reject North Water's contentions to the contrary.

The seventh claim is for lender liability and the eighth for equitable indemnity. North Water argues the statute of limitations for the Complaint began to run February 1, 2013. With the shortest period of time being three years, it argues that both

-4-

of these claims for relief should be dismissed with prejudice.

Qualcomm argues that the court's suspension under section 305 (from September 9, 2013 to July 2, 2014) tolled any applicable statute of limitations. It cites no federal authority for that proposition but does cite inapposite California law, and the court knows of none. Nor was it the court's intention to toll any limitations periods when it ordered the suspension to await the outcome of appeal of the Action. Regardless of the court's intention, it is doubtful that such a tolling could have been authorized.

In the alternative, Qualcomm argues persuasively, citing apposite California law, that both the "continuing violation doctrine" and "discovery rule" regarding the conduct alleged in the two claims affected by any statute of limitations makes the determination of when and if it is operative essentially a fact-intensive question that cannot be determined at this stage of the case[3]. For this reason that theory is sustained and North Water's argument rejected, without prejudice.

5. **Judicial Estoppel**

North Water believes that what Qualcomm said about its lack of culpability with Debtors in the Action precludes it from taking a contrary position in the present matter. North Water cannot point to any specific gain Qualcomm achieved by its rhetoric, a necessary element for judicial estoppel to apply.

More importantly, Qualcomm is prosecuting this action on behalf of the estate via section 503, so whatever theoretical

---

[3]Thus there is no reason to decide whether the claim of equitable indemnity would not ripen until Debtors paid their obligation to Qualcomm.

-5-

advantage it may have gained by its position and statements in the Action cannot be visited upon it here in its representative capacity on behalf of the estate. The court rejects this defense.

6. **Adequacy of the pleadings.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679.

The allegations must include "the who, what, when, where, and how of the misconduct charged" and "must set forth more than the neutral facts necessary to identify the transaction." In addition, claims that fall under Rule 9(b) must meet *Iqbal's* plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011)(citations omitted). The court turns to the remaining claims.

**A.  First Claim - Unmatured interest.**

Qualcomm alleges that the unmatured interest on the principal of the Promissory Note under §502(b)(2) should be disallowed. The Promissory Note specifies "the Principal plus . . . 400%" payable on the earlier date of the October 11, 2020, IP Event, or the resolution of the Qualcomm litigation. Complaint, ¶¶ 85 & 86. North Water argues black letter law allows for interest on a

-6-

secured claim. Here, the PSJ established that North Water's and the Alleged Secured Purchasers' claims are not secured. Qualcomm's first claim for relief suggests a plausible claim for relief. The Motion is Denied as to this claim.

` B. **Second and Third remaining claims - avoid obligations**

Now that the disputed lien issues have been resolved by the "no transfer" theory of the PSJ, all that appear to remain of these two claims are the attempt to avoid as fraudulently incurred the obligations of Trace under the Alleged NW Note (Complaint, ¶ 59) and the Alleged Secured Notes (Complaint, ¶ 60). As noted, the allegations only identify three claimants with claims to which objections are directed. If there are other obligations Qualcomm seeks to avoid, they need to be identified, as do the obligees who might have filed claims along with the corresponding claims by filing date and claim number.

As for that alleged fraudulent incurring of obligations, actual fraud and constructive fraud have been conflated into one federal claim and one state law claim (Complaint, ¶¶ 89-93; 102-105. If Qualcomm wishes to pursue these theories, it will need to separate them. Further, the only specifics regarding insolvency are balance sheet insolvency of Gabriel found in ¶¶ 25, 41 & 67 of the Complaint. If the insolvency of Trace is relevant, it must be alleged. Actual fraud may be shown without proof of insolvency (albeit rarely) but constructive fraud requires more pleading and more proof. The allegations of unreasonably small capital and incurring debts beyond ability to pay (Complaint, ¶¶ 92 & 93) are inadequate without more; there are no allegations of cash flow insolvency.

`     For these reasons the Motion will be granted as to this portion of the claim, with leave to amend.

C. **Fifth Claim - Recharacterization.**

To repeat, only two Alleged Secured Purchasers have filed claims to be recharacterized as interests. North Water assigned its claim. No Subordinated Interestholder is said to have filed a claim. For these reasons alone the Motion will be granted as to this claim with leave to amend.

Qualcomm argues that the debt obligations given to Purchasers (North Water, Subordinate Interestholders, and Alleged Secured Purchasers) were intended to be equity, not debt, and should be characterized as such. Given the juxtaposition of the highly speculative nature of the litigation in the Action and a possibility of inability to repay any obligations with an undercapitalized Trace, leading to a bond of $800,000 for meritless litigation, Qualcomm alleges that the notes at issue contained no schedule of payments and "because the only payment source was the proceeds of an IP Event. As such, the 'maturity' of October 11, 2020 was illusory." Complaint, ¶ 123.

North Water argues Qualcomm failed to plausibly allege, under Ninth Circuit requirements, that the Senior Promissory Note did not give a right to payment under New York law. North Water asserts the Senior Promissory Note gave a contractual right to a "fixed sum" no later than a certain date. This amount was not made conditional on any extrinsic factor. Additionally, it analogizes the holding of *In re Interborough Realty Co.*, No. 199, 1915 U.S. App. Lexis 1778 at *1 (2d Cir. Apr. 21, 1915) to its situation. There, the court found that an instrument giving a

-8-

holder right to repayment of principal sum, plus a share of debtor's surplus funds, constituted debt rather than equity.

North Water argues that the amount in excess of the principal should be considered debt because a debt instrument was used, there was a fixed maturity date and specified amount, and that North Water and Debtors had no prior connections.

In reply Qualcomm cited *People v. Grasso*, 831 N.Y.S.2d 349 (2006), to define the difference between debt and equity with the essential inquiry being whether "the funds were advanced with reasonable expectations of repayment regardless of the success of the venture or were placed at the risk of the business." *Id*. at 232, citing *TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006). Qualcomm asks the court to scrutinize the record in a fact-intensive manner as defined by other courts. *Id*. citing *In re Adelphia Commc'n Corp.*, No. 02-41729 (REG), 2006 WL 687153, at *10 (Bankr. S.D.N.Y. Mar. 6, 2006). The facts suggest that there was no schedule of payments, with the only source of payment being the occurrence of the IP Event. Dkt. No. 1, paragraph 123.

Here, a fact-intensive procedure and an analysis under the totality of circumstances is required. Recharacterization requires analysis of several factors. *Paris v. SSAB Enters., LLC (In re SIAG Aerisyn, LLC)*, Nos. 12-11705, 13-1040, 2014 Bankr. LEXIS 4586 (Bankr. E.D. Tenn. Nov. 3, 2014). Taking the facts pleaded as true, but subject to the defects noted at the beginning of this discussion, there is enough in the Complaint to allow the claim to proceed. There are plausible facts to entitle this claim to stand. The Motion will be granted as to this claim with leave to amend.

-9-

D. **6th Claim - Equitable Subordination.**

"The subordination of claims based on equitable considerations generally requires three findings: (1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code." *Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 1006 (9th Cir. 2006).

Qualcomm contends that North Water acted recklessly in a self-motivated manner at the expense of all other creditors. Complaint, ¶ 141. It alleges North Water controlled Debtors' conduct and directed the Action. This made North Water an insider and fiduciary of the operation.

North Water argues that it is not an non-insider, non-fiduciary. Therefore, a heightened pleading standard is required, "[G]ross and egregious conduct will be required before a court will equitably subordinate a claim." *Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 1006 (9th Cir. 2006). North Water challenges Qualcomm's claim for failure to establish facts to show North Water was either an insider or a fiduciary, resting its claim on the basis that North Water exerted control. The heightened standard, requires specificity of facts which North Water contends have not been plead.

North Water urges the court to rule in favor of established law that a lender does not owe a duty to its borrower. Qualcomm asserts actual control because of the Letter of Intent; North Water argues nothing within the agreements or any action show actual control. Finally, it argues that Qualcomm has failed to

-10-

show *how* North Water breached any duty, because simply pursuing the Action is not enough.

Here, using the heightened standard expected of courts, there is a sufficient amount of specificity included in the Complaint except for the parties responsible for the conduct. As noted, there are only three claims filed by named Defendants. While GBC's claim, as the assignee of North Water, is vulnerable to objections based on North Water's conduct, it is not at all clear from the Complaint how Moore or Manning (or any other unknown claimant) would be vulnerable based on North Water's conduct as alleged. An amended complaint will need to allege how any such claimant's claim would be subject to equitable subordination. At present there are no specifics as to the Alleged Secured Purchasers, and specifically Manning and Moore, against whom the allegations are mere generalizations. Complaint, ¶¶ 141, 144-146.

The Motion will be granted as to this claim, with leave to amend.

E. **Seventh Claim - Lender Liability, Breach of Fiduciary Duty, etc.**

Qualcomm argues that North Water possessed the equivalent of a majority shareholder's voting right by virtue of its investments in Debtors and its control over decision-making authority. This control was exhibited when North Water exercised absolute control over Debtors and replaced their boards of directors, allowing a windfall profit of 400% of its actual investment. Qualcomm argues this placed North Water in a fiduciary position. Its conduct violated its duties when it acted in a reckless nad grossly negligent manner even while the claims were likely meritless and

-11-

further continuance would be in bad faith, resulting in sanctions. As a result of the continued litigation. Complaint, ¶¶ 150-157. Debtors were injured.

North Water contends, amongst other issues discussed *supra*, that a claim for *prima facie* tort does not exists under California or Nevada law, and therefore this claim should be dismissed with prejudice. The claim would not fare better under Delaware law because Qualcomm's claim does not implicate the "internal affairs" of either company. *See, e.g., In re Brocade Communs. Sys. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1036 (N.D. Cal. 2009).

Qualcomm maintains that under Section 23 of the NPA, the laws of New York were selected and should be applied to this claim for relief. Qualcomm contends that "liability for a *prima facie* tort exists against a bad-faith lender who acts with malice and without excuse or justification to harm the borrower and in so doing causes measurable harm." *See Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 497 (2d Cir. 1995) (*citing Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142 (1985) ("*Prima facie* tort affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." (internal quotes omitted)). Nor does the existence of a contract shield the tortfeasor from liability. *Id*. The facts allege an actionable claim under New York law, as North Water acted in conspiracy to exert control over Gabriel and Trace for self-serving purposes.

The facts alleged provide a plausible basis for a *prima facie* tort of North Water, and Lakebridge would be liable as general partner. But the Complaint says nothing to support GBC's

-12-

liability on this claim.  For that reason the Motion will be granted as to this claim, with leave to amend.  The claim will stand as is if Qualcomm simply drops GBC from an amended complaint.

F. **Eighth Claim - Equitable Indemnity**

Qualcomm alleges that North Water and Debtors entered in to a joint venture in connection to the Qualcomm Litigation. As coventurer-investor, North Water provided capital, bearing all the financial loss, or at minimum sharing in all losses.

North Water argues that Qualcomm failed to establish an agreement to share in profits and losses, an essential element for a joint venture. *See Marshack v. Mesa Valley Farms, L.P. (In re The Ridge II)*, No.94-56300, 1996 U.S.App. Lexis 14642, at *6 (9th Cir. May 29, 1996). Further it argues there was no "right to joint control."  *See Resolution Trust Corp.v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994).

In its reply, Qualcomm alleges the "Waterfall" provision in the NPA is consideration for the loan to Debtors with the "IP Event Proceeds" being proof for an agreement to share in profits and losses.  Qualcomm states that "the Complaint alleges multiple grounds for a right of control of the litigation held by North Water—discovery will bear out the full nature of that control." For now, Qualcomm argues that North Water's control is evidenced by the express terms of the NPA, the practical effect funding had over litigation, and an economic stake over and above Debtors. Through their allegations Qualcomm attempts to demonstrate that the Term Sheet allows North Water to pay HHR directly and therefore allow themselves to provide direction and participate

-13-

actively in the Qualcomm Litigation to obtain a windfall profit on its equity investment.

It is true an ordinary agreement to share in profits and losses is not present. However, North Water and Debtors executed a complicated funding agreement. The allegations presented by Qualcomm offer a plausible explanation for a unique agreement to share in profits and losses. At this stage of the litigation Qualcomm is afforded an assumption of truth on facts plead and may therefore proceed. The Motion will be denied as to this claim.

G. **Ninth Claim - Usury**

The parenthetical under the heading for this claim states that it is asserted affirmatively and defensively. This is inconsistent with the concession of counsel at the oral argument that no affirmative relief is sought here. The court will accept that later statement as so, and consider this claim only defensively.

As stated with regard to other claims, the problem with the pleading that the assignee of North Water, GBC, is not named and all Alleged Secured Purchasers are even though only Manning and Moore are alleged to have filed claims.

Qualcomm argues the annual interest rate exceeds the allowable amount under California Constitution, Article XV, Section 1(2) for a loan for any use other than primarily for personal, family, or household purposes. The maximum interest rate of ten percent or the sum of five percent per annum plus the Federal Reserve rate that prevailed on the date that is the 25th day of the month preceding the earlier of the date of execution of the contract to make the loan or the date of making the loan.

Complaint, ¶ 176.

The court accepts Qualcomm's contention that the choice of New York or California law is a fact-intensive inquiry and cannot be decided at this stage. This is so even though the Seventh Claim is controlled by New York law.

The Motion will be Granted as to this claim, with leave to amend.

H. **Eleventh Claim - Unenforceability**

This claim for relief alleges that the NPA is unenforceable. To the extent the PSJ determined that the purported grant of a security interest was void, that and related portions of the NPA are unenforceable, making the Motion moot to that extent. Any other obligations Qualcomm would seek to have declared unenforceable must be identified specifically along with obligee and the claim that has been filed. To the extent the obligation is unenforceable other than has been dealt with in other remaining claims, more details are necessary. The incorporation of the prior 184 paragraphs of the Complaint with little substance in the remaining ¶¶ 186 & 187 lead the court to suspect that this claim is nothing more than redundant, but it will grant the Motion with leave to amend nevertheless.

III. DISPOSITION

The court is concurrently issuing order disposing of the Motion consistent with this Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***